Filed 6/16/23  P. v. Lee CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID LEE, JR.,<br><br>Defendant and Appellant. | F085345<br><br>(Kern Super. Ct. No. BF122135C)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Poochigian, J. and Detjen, J.

# INTRODUCTION

David Lee, Jr. (appellant), Corey Ray Johnson, and Joseph Kevin Dixon were charged and convicted of committing multiple offenses, including three counts of first degree premeditated murder (Pen. Code, § 187, subd. (a), § 189)[1] with multiple murder and gang special circumstances (§ 190.2, subds. (a)(3), (a)(22)).  They were each sentenced to three consecutive terms of life in prison without possibility of parole, and their murder convictions were affirmed on direct appeal.  (*People v. Lee* (May 17, 2022, F082341) [nonpub. opn.].)[2]

In 2020, appellant filed a petition for resentencing pursuant to former section 1170.95,[3] and alleged his murder convictions were based on the felony-murder rule and/or the natural and probable consequences doctrine, and he was not the actual killer.  The trial court denied appellant's petition.  On appeal, his appellate counsel filed a

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] Appellant's appellate counsel filed a request for this court take judicial notice of our records and nonpublished opinions in *People v. Johnson et al.* (Sept. 25, 2013, F057736) and *People v. Lee* (May 17, 2022, F082341).  We hereby grant this request.

The following facts and procedural background are from these records and opinions, along with the California Supreme Court's decision in *People v. Johnson* (2013) 57 Cal.4th 250.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion."  (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage.  (*People v. Clements, supra,* 75 Cal.App.5th at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)  We will recite the factual statement from these cases to place appellant's arguments in context and will not rely on these facts to resolve his appeal from the trial court's order that found his second petition did not state a prima facie case for relief.

[3] Appellant filed his first petition for resentencing in 2020 pursuant to former section 1170.95 and filed his second petition in 2022.  As will be discussed below, the statute was substantively amended effective January 1, 2022, and renumbered as section 1172.6 without further change on June 30, 2022.  (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436. This court conducted an independent review of the record and affirmed the trial court's order on appeal. In doing so, we held the amendments enacted by Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775) applied to the review of his petition since his case was not yet final, and found his petition failed to state a prima facie case for relief under the amended statute. (*People v. Lee*, *supra*, F082341.)

In 2022, while appellate review of his first petition was pending, appellant filed a second petition with the trial court for resentencing pursuant to section 1172.6, and claimed he was entitled to relief because Senate Bill 775 had expanded eligibility for resentencing. After this court's opinion was filed that affirmed the denial of his first petition, the trial court held a hearing on appellant's second petition and held he failed to state a prima facie case for relief, and that this court had already found he was ineligible as a matter of law under the amendments enacted by Senate Bill 775.

Appellant has filed this appeal from the trial court's denial of his second petition for resentencing. Appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) and *Wende*. Appellant submitted his own letter brief and requested this court address certain issues.

We will address appellant's contentions, conduct our own independent review of the record, and affirm.

## FACTS

"Defendants Corey Ray Johnson, Joseph Kevin Dixon, and David Lee, Jr., were part of a 200–member Bakersfield gang called the Country Boy Crips (CBC). CBC's rival gangs included the Eastside Crips and the Bloods. Dupree Jackson, a CBC member, testified for the prosecution under a grant of immunity. He was defendant Johnson's cousin and sold drugs for the gang. He described the gang's structure and the different

3.

roles members filled. Some sold drugs. Some patrolled the boundaries of the gang's territory to keep out enemies and outsiders. Some would "hang out," and some were "pretty boys" who brought women into the gang. Others would "ride with the guns" to seek out and kill enemies. Defendant Johnson sold drugs and was also a shooter for the gang with the moniker 'Little Rifleman.' Defendant Dixon was considered a gang leader because he had been to prison and had family ties to the gang. Defendant Lee would sell drugs, obtain cars, and drive for and 'ride' with other gang members.

"Testimony of several witnesses established that between March and August 2007, defendants were involved in various retaliatory shootings against perceived rivals. On March 21, 2007, members of the Bloods shot Lee. He and Johnson retaliated by shooting Bloods member Edwin McGowan. Lee was fired upon again the following day. All three defendants were then involved in a retaliatory shooting on April 19, 2007, outside an apartment in Eastside Crips territory. Vanessa Alcala and James Wallace, neither of whom was a gang member, were killed during the incident. Ms. Alcala was pregnant. Anthony Lyons was also shot but survived. On August 9, 2007, a fellow CBC member was shot and killed. Defendants and Jackson identified the shooter, armed themselves, and drove to the home of the shooter's father. They intended to retaliate but were scared away when a car drove by. Two days later, Johnson, accompanied by Dixon and Lee, shot Adrian Bonner, a Bloods associate, paralyzing him. Jackson related statements Johnson and Dixon made about the shootings.

"Johnson's girlfriend, Sara Augustin, also testified under a grant of immunity. She recounted various statements Lee and Johnson made about their involvement in the shootings. DNA testing of clothing found near the apartment shooting scene was linked to defendants, primarily to Johnson. Cell phone records reflected Dixon's and Lee's cell phones were at the location of the various shootings and were used to call each other or other CBC members before and after the events. Various witnesses gave descriptions of

4.

the participants that matched all three defendants." (*People v. Johnson*, *supra*, 57 Cal.4th at p. 256.)

## PROCEDURAL BACKGROUND

**Charges, Convictions, and Sentences**

Appellant, Johnson, and Dixon "were tried and convicted after a joint jury trial of three counts of first degree murder with multiple-murder and gang-murder special circumstances, two counts of attempted murder, shooting at an occupied vehicle, active gang participation, and conspiracy, as well as various enhancements." (*People v. Johnson, supra*, 57 Cal.4th at pp. 256–257.)

"All defendants received three terms of life without the possibility of parole for the murder counts. Dixon received an additional term of 238 years to life, while Johnson and Lee received additional terms of 196 years to life. Those terms included a term of 25 years to life for conspiracy as to Johnson and Lee, and 50 years to life as to Dixon (25 years to life, doubled under the 'Three Strikes' law)." (*People v. Johnson, supra*, 57 Cal.4th at p. 257.)

**Direct Appeal**

In a joint direct appeal filed by appellant and codefendants Johnson and Dixon, this court affirmed the judgments with "some minor exceptions and modifications." (*People v. Johnson* (2012) 205 Cal.App.4th 594 [review granted, and opinion superseded by *People v. Johnson, supra*, 57 Cal.4th 250].)

In count 9, all defendants had been charged with "conspiracy to commit any or all of four separate criminal offenses – assault with a firearm (§ 245, subd. (a)(2)), murder (§ 187), robbery (§ 211), and active participation in a criminal street gang (§ 186.22, subd. (a)). No victim(s) or particular dates (other than March 2–August 22, 2007) were specified. The jury returned separate guilty verdicts, and separately found true one or more overt acts, with respect to each defendant and each object of the conspiracy.

5.

Defendants were each sentenced on count 9 for conspiracy to commit first degree murder." (*People v. Johnson, supra*, 205 Cal.App.4th at p. 600.)

On appeal, this court reversed defendants' convictions for "conspiracy to commit a violation of section 186.22, subdivision (a), active participation in a criminal street gang," and agreed with their argument that it was "an invalid crime because a violation of section 186.22 is itself a conspiracy, and 'a conspiracy to commit a conspiracy is a nonsensical redundancy that results in unconstitutional vagueness.' " (*People v. Johnson, supra*, 205 Cal.App.4th at pp. 600–601.) This court "held that conspiracy to actively participate in a criminal street gang did not qualify as a crime. It affirmed the conspiracy convictions, however, because each was also based on the valid theory of conspiracy to commit murder." (*People v. Johnson, supra*, 57 Cal.4th at p. 257.)

**The California Supreme Court's Decision**

The California Supreme Court granted the People's petition for review from this court's opinion in the direct appeal, in order "to decide whether one may conspire to actively participate in a criminal street gang. One can. When an active gang participant possessing the required knowledge and intent agrees with fellow gang members to commit a felony, he has also agreed to commit the gang participation offense. That agreement constitutes conspiracy to commit the offense of active gang participation, and may be separately charged once a conspirator has committed an overt act." (*People v. Johnson, supra*, 57 Cal.4th at p. 255.)

"Defendants were active gang members, well aware of each other's active status and the gang's pattern of criminal gang activity. Their agreement to commit the various shootings here constituted an agreement to commit the gang participation offense and, once an overt act was performed, all the elements of conspiracy to violate section 186.22(a) were satisfied." (*People v. Johnson, supra*, 57 Cal.4th at p. 267.) The court remanded the matter for further appropriate proceedings. (*Ibid.*)

6.

**Decision on Remand**

On remand, this court again affirmed the convictions and sentences for first degree murder with special circumstances, with minor corrections. In light of the Supreme Court's ruling, we affirmed defendants' convictions for conspiring to actively participate in a criminal street gang. We reversed defendants' convictions for conspiracy to commit robbery because it was not supported by a valid overt act. (*People v. Lee*, *supra*, F082341.)

## APPELLANT'S FIRST PETITION FOR RESENTENCING

On June 8, 2020, appellant filed, in pro. per., a petition for resentencing under former section 1170.95, and requested appointment of counsel.

The petition was supported by appellant's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that he was entitled to resentencing under former section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder under the amended versions to sections 188 and 189 because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder, and he was not a major participant and did not act with reckless indifference.

The court appointed counsel to represent appellant. (*People v. Lee*, *supra*, F082341.)

**The People's Opposition**

On July 30, 2020, the People filed opposition to appellant's petition, supported by the factual statement from this court's opinion in appellant's direct appeal. The People argued appellant was ineligible for resentencing as a matter of law because he was not

prosecuted under the felony-murder rule or the natural and probable consequences doctrine, and no underlying felonies were alleged. "This was a straightforward actual malice, premeditated murder prosecution and conviction."

The People further argued appellant was ineligible for relief based on the jury's true finding on the multiple murder special circumstance. "The jury was also instructed that in order to find a multiple-murder special circumstance as to a non-killer, they had to find the defendant acted with intent to kill. Because the jurors found all multiple-murder special circumstances to be true as to all defendants, the jurors necessarily determined each defendant had the specific intend to kill. The verdict regarding the special circumstance clearly shows that Petitioner acted with the specific intent to kill." (*People v. Lee*, *supra*, F082341.)

**Appellant's Reply**

On November 2, 2020, appellant filed a reply to the opposition, and argued he made a prima facie showing because the jury was instructed on the natural and probable consequences doctrine as it related to conspiracy. (*People v. Lee*, *supra*, F082341.)

**The Trial Court's Denial of Appellant's First Petition**

On December 15, 2020, the trial court filed a minute order and summarily denied appellant's first petition for resentencing. It did not conduct a hearing or give reasons why it did not issue an order to show cause (OSC). (*People v. Lee*, *supra*, F082341.)

## THIS COURT'S OPINION AFFIRMING THE DENIAL OF APPELLANT'S FIRST PETITION

Appellant filed a timely notice of appeal from the trial court's denial of his first petition. On appeal, his appellate counsel filed a brief pursuant to *Wende* and asked this court to independently review the record. On April 9, 2021, this court invited appellant to submit a supplemental brief; he did not do so.

On May 17, 2022, this court filed the nonpublished opinion that affirmed the denial of appellant's first petition for resentencing. (*People v. Lee*, *supra*, F082341.) We

8.

conducted a full, independent review of the record, and explained that Senate Bill
No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) enacted former section 1170.95,
which became effective on January 1, 2019. In 2021, the California Supreme Court
extensively interpreted former section 1170.95 in *Lewis*. Former section 1170.95 was
substantially amended by Senate Bill 775, effective January 1, 2022.

We further explained that appellant's petition for resentencing was filed and
denied before the decision in *Lewis* and the effective date of Senate Bill 775's
amendments but held "the amended statute applies since his case is not yet final." We
thus reviewed appellant's petition to determine whether it stated a prima facie case for
resentencing under the amendments to former section 1170.95 enacted by Senate
Bill 775.

As to appellant's petition, we found the trial court complied with Senate Bill 775's
amendments to former section 1170.95, by appointing counsel and allowing for briefing,
but it did not conduct a hearing or give a statement of reasons why it did not issue an
OSC, and it may have engaged in premature factfinding at the prima facie stage.
However, we further explained that we may affirm the denial of the petition if appellant
was not prejudiced by the statutory errors in the case. (*Lewis, supra*, 11 Cal.5th at
pp. 972–974.) We held any statutory errors were not prejudicial for the following
reasons.

> "A petitioner is ineligible for resentencing if he was the actual killer,
> acted with the intent to kill or malice aforethought, or was a major
> participant in the underlying felony who acted with reckless indifference to
> human life. [Citations.]
>
> "In this case, the jury found true the multiple-murder special
> circumstances alleged pursuant to section 190.2, subdivision (a)(3) as to
> each murder charge, that required the jury to find either that Lee was the
> actual killer, or that he acted with intent to kill in aiding and abetting the
> murders. [Citation.] As this court explained in the opinion in the direct
> appeal, '[t]he jury ... was instructed that defendants were being prosecuted
> for first degree murder under two theories: one, that the murders were

willful, deliberate, and premeditated; and two, that the murders were committed by lying in wait.' [Citation.] 'Jurors were also instructed on transferred intent, to wit, if the defendant intended to kill one person but by mistake or accident killed another person, the crime (if any) was the same for the unintended killing as for the intended killing.' [Citation.]

" With respect to the multiple-murder special circumstance, jurors [in this case] were instructed that if they found a defendant was guilty of first degree murder but was not the actual killer, *they had to find he acted with the intent to kill in order to find the special circumstance true.*' [Citation.] As this court explained, the jurors in this case 'necessarily found defendants acted willfully with intent to kill; they were instructed, pursuant to CALCRIM No. 521, that a defendant acted willfully if he intended to kill; and, pursuant to CALCRIM No. 702, that, *in order to find a multiple-murder special circumstance as to a nonkiller, they had to find the defendant acted with the intent to kill.* Because jurors found all multiple-murder special circumstances true as to all defendants, jurors necessarily determined each defendant had the specific intent to kill.' [Citation.]

" 'The People did not proceed on a natural-and-probable-consequences theory of liability insofar as aiding and abetting was concerned.' [Citation.] '[T]he trial court never mentioned the natural-and-probable-consequences doctrine in conjunction with aiding and abetting liability, never identified the specific circumstances under which a defendant might be found guilty of other crimes, and never directed the jury to make any sort of findings on the issue. ... [W]hen it explained aiding and abetting and conspiracy theories of liability to the jury, the prosecutor did not even discuss, let alone rely on, the natural-and-probable-consequences doctrine in the context of aiding and abetting.' " (*People v. Lee*, *supra*, F082341, italics added in original.)

We affirmed the trial court's order that denied appellant's first petition for resentencing.

### APPELLANT'S SECOND PETITION FOR RESENTENCING

The instant appeal is from the trial court's denial of appellant's second petition for resentencing.

On January 12, 2022, appellant filed a second petition for resentencing while the appeal on his first petition was still pending before this court.

10.

In support of his second petition, appellant filed a declaration that consisted of a preprinted form where he checked boxes that he was eligible for resentencing because (1) a complaint, information, or indictment was filed that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted of murder, attempted murder, or manslaughter following a trial, or accepted a plea offer in lieu of a trial in which he could have been convicted of murder or manslaughter; and (3) he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

Appellant requested appointment of counsel. The court appointed counsel to represent him and ordered further briefing.

**The Prosecution's Opposition**

On April 12, 2022, the prosecution filed opposition and requested the court take judicial notice of the records and appellate opinions in appellant's prior cases. The prosecution argued appellant was ineligible for resentencing as a matter of law because the jury instructions showed he was convicted as either the actual killer, or he aided and abetted with the intent to kill.[4]

**Appellant's Reply**

On July 1, 2022, appellant's appointed counsel filed a reply and argued the jury was instructed on the natural and probable consequences doctrine based on the conspiracy instructions.

---

[4] On May 17, 2022, this court filed the nonpublished opinion that affirmed the denial of appellant's first petition for resentencing. (*People v. Lee*, *supra*, F082341.)

11.

**The Court's Hearings**

On September 7, 2022, the court heard and denied appellant's motion to discharge his appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.

On October 4, 2022, the court convened the hearing on appellant's second petition for resentencing. Defense counsel advised the court that appellant wanted to make another *Marsden* motion, and the court held another in camera hearing.

When the proceedings resumed in open court, the court stated it had denied appellant's second *Marsden* motion but granted his request to represent himself. However, the court reconsidered that decision and stated it was going to reappoint defense counsel to represent appellant and would not allow appellant to represent himself. "You've had a history of filing this petition since June of 2020." Appellant said the law changed and expanded eligibility under Senate Bill 775. The court replied he was raising the same issues, the appellate court considered the amendments enacted by Senate Bill 775 when it affirmed the denial of his first petition, and appellant was "just playing games."

The court reappointed counsel, and both defense counsel and the prosecutor submitted the matter on the pleadings.

The court denied appellant's second petition and extensively read from this court's opinion that affirmed the denial of his first petition. The court explained this court addressed the merits of appellant's first petition based on the amendments enacted by Senate Bill 775, and found appellant was ineligible for resentencing as a matter of law.

On November 30, 2022, appellant filed a timely notice of appeal from the denial of his second petition.

## DISCUSSION

### I.      Delgadillo/Wende

In *Delgadillo*, the court held a *Wende* analysis is not applicable to a trial court's order that denies a petition for postconviction relief under section 1172.6. (*Delgadillo,*

12.

*supra*, 14 Cal.5th at p. 222.) *Delgadillo* held that instead of using the process outlined in *Wende*, appointed counsel and the appellate court should do the following: "When appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter." (*Id.* at pp. 231–232.)

"If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion…. If the defendant does not file a supplemental brief or letter, the Court of Appeal may dismiss the appeal as abandoned. [Citation.] … While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Delgadillo, supra*, 14 Cal.5th at p. 232.)

In this case, appellate counsel filed a brief pursuant to *Delgadillo* and *Wende* from the denial of appellant's second petition. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. This court sent appellant an order that, pursuant to *Delgadillo*, the appeal would be dismissed as abandoned if he failed to submit a letter brief within 30 days.

On March 27, 2023, appellant filed a supplemental brief with this court in response to our *Delgadillo* order. We will address his arguments and exercise our discretion to independently review the record.

## II.     Successive Petitions

In his supplemental brief, appellant asserts the trial court improperly denied his second petition based on the erroneous belief that he was not raising any new issues. Appellant claims he was entitled to file a successive petition for resentencing because it

13.

was based on new legal authority enacted by Senate Bill 775, that was not considered in his first petition that was filed under Senate Bill No. 1473.

A petitioner may file a successive petition under section 1172.6 if it is based on new legal authority. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 946–947, 950–951 (*Farfan*).) *Farfan* held the defendant in that case could file a successive petition because the California Supreme Court's ruling in *Lewis* and other published cases demonstrated the "still-evolving state of [former] section 1170.95 jurisprudence" such that a second petition would not be barred by collateral estoppel. (*Farfan*, at p. 950.)

In this case, appellant filed his first petition for resentencing in 2020 pursuant to former section 1170.95 and sought resentencing of his murder convictions; the trial court denied the petition that same year. The trial court's ruling that denied his first petition was made prior to the California Supreme Court's decision in *Lewis* and the amendments enacted by Senate Bill 775, that became effective on January 1, 2022.

Appellant filed an appeal from the trial court's denial of his first petition. In 2022, when this court reviewed the trial court's ruling, we expressly found that the decision in *Lewis* and the statutory amendments enacted by Senate Bill 775 applied to appellate review of appellant's first petition since the case was not yet final. We held the trial court's failure to comply with the amended statute was not prejudicial, extensively reviewed the jury instructions given in the case, and concluded appellant was convicted either as the actual killer or as an aider and abettor who acted with the intent to kill, and he was ineligible for resentencing as a matter of law.

The trial court held the hearing on his second petition after this court filed the opinion that affirmed the denial of his first petition. Appellant repeatedly insisted that his second petition was based on the "expanded eligibility" resulting from the amendments enacted by Senate Bill 775, and the trial court never considered certain arguments under the amended statute when it denied his first petition.

14.

While this court reviewed the denial of appellant's first petition based on the amended statute, his appellate counsel filed a *Wende* brief and did not raise specific issues. We thus turn to section 1172.6 and the issues appellant has raised in his supplemental brief.

## III. Section 1172.6

"Effective January 1, 2019, Senate Bill ... 1437 ... amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*Strong, supra*, 13 Cal.5th at p. 708, fn. omitted; *Lewis, supra*, 11 Cal.5th at p. 959.) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) made substantive amendments to former section 1170.95 that were consistent with *People v.*

15.

*Lewis, supra*, 11 Cal.5th 952, and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes. (*People v. Saibu*, *supra*, 81 Cal.App.5th at p. 715, fn. 3.)

Section 1172.6, subdivision (a) thus states:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)[5]

---

[5] While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f).)

16.

The court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id.* at subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

If an order to show cause is issued, "the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence...." (§ 1172.6, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of

evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens...." (§ 1172.6, subd. (d)(3).)[6]

## IV.     Appellant's Instructional Contentions

We first note that when appellant filed his second petition, the trial court complied with section 1172.6 and appointed counsel, ordered further briefing, conducted a hearing on the petition, and gave reasons for denying the petition.

Appellant contends his second petition stated a prima facie case for resentencing on his convictions because the jury convicted him based on imputed malice, since the jury was instructed with certain language about "implied" malice, the phrase "equally guilty," and the aiding and abetting and lying-in-wait instructions.

As in his first appeal, we have extensively reviewed the instructions given at appellant's jury trial, and his arguments are meritless.

First, the jury was correctly instructed with CALCRIM No. 520 on express and implied malice, that express malice was the unlawful intent to kill, and he acted with implied malice if he intentionally committed an act, "[t]he natural and probable consequences of the act were dangerous to human life," at the time he acted, he knew his

---

[6] "If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing" in determining whether he made a prima facie case for relief. (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted.)

act was dangerous to human life, and he deliberately acted with conscious disregard for human life. Contrary to appellant's argument, implied malice is a concept distinct from the natural and probable consequences doctrine of imputed malice, and the instructional definition does not purport to impute malice from the commission of some other criminal act, as is now prohibited under Senate Bill 1437. (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 850; *People v. Clements, supra,* 75 Cal.App.5th at p. 299.)

Second, appellant apparently relies on the phrase "equally guilty" used in CALCRIM No. 400, one of the aiding and abetting instructions, and asserts this phrase allowed the jury to convict him based on imputed malice. As given at appellant's trial, CALCRIM No. 400 stated: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is *equally guilty* of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it." (Italics added.) The inclusion of this phrase, however, did not result in appellant being convicted based on imputed malice because the jury was also instructed with CALCRIM No. 401, that an aider and abettor had to know the unlawful purpose of the perpetrator, intended to encourage or facilitate the commission of the crime, and by act or advice, aided or encouraged the commission of the crime. By giving CALCRIM No. 401, the instructional language "would have cleared up any ambiguity arguably presented by CALCRIM former No. 400's reference to principals being 'equally guilty.' " (*People v. Johnson* (2016) 62 Cal.4th 600, 641.)

We further note that appellant's convictions for attempted murder became eligible for resentencing as a result of the amendments enacted by Senate Bill 775. However, his second petition also failed to make a prima facie case for resentencing on these convictions. The jury was instructed with CALCRIM No. 600, that to prove that he was guilty of attempted murder, the People had to prove that he took at least one direct but

19.

ineffective step toward killing another person, and he *intended to kill* that person. (Italics added.)

As to appellant's other claims based on the conspiracy and lying-in-wait instructions, we again conclude that the entirety of the instructions show the jury convicted appellant of first degree murder based on his own intent to kill. As we explained in his appeal from the denial of his first petition, "the jury found true the multiple-murder special circumstances alleged pursuant to section 190.2, subdivision (a)(3) as to each murder charge, that required the jury to find either that appellant was the actual killer, or that he acted with intent to kill in aiding and abetting the murders…. [¶] 'With respect to the multiple-murder special circumstance, jurors [in this case] were instructed that if they found a defendant was guilty of first degree murder but was not the actual killer, *they had to find he acted with the intent to kill in order to find the special circumstance true.*' [Citation.] As this court explained, the jurors in this case 'necessarily found defendants acted willfully with intent to kill; they were instructed, pursuant to CALCRIM No. 521, that a defendant acted willfully if he intended to kill; and, pursuant to CALCRIM No. 702, that, *in order to find a multiple-murder special circumstance as to a nonkiller, they had to find the defendant acted with the intent to kill.* Because jurors found all multiple-murder special circumstances true as to all defendants, jurors necessarily determined each defendant had the specific intent to kill.' " (*People v. Lee*, *supra*, F082341.)

Appellant's instructional claims are meritless, and his second petition did not state a prima facie case for resentencing on his multiple convictions for attempted murder and murder.

V.    **Ineffective Assistance Contentions**

Also in his supplemental brief, appellant raises several issues relating to the trial court's denial of his two *Marsden* motions, the denial of his request to represent himself

20.

at the hearing on his second petition for resentencing and claims of ineffective assistance purportedly committed by both his trial and appellate counsel.

## A. *Background*

We begin with appellant's two *Marsden* motions brought in connection with his second petition for resentencing.

On September 7, 2022, the court conducted the first in camera *Marsden* hearing.[7] Appellant complained his appointed counsel refused to investigate his claims of newly discovered evidence purportedly found in "grand jury testimony," and argued such evidence was relevant because Senate Bill 775 expanded eligibility for resentencing. Defense counsel replied these alleged issues were not relevant in a section 1172.6 petition. The court denied the *Marsden* motion and advised appellant that he could not make a new trial motion in a petition for resentencing.

On October 4, 2022, the court convened the hearing on appellant's second petition for resentencing. Defense counsel advised the court that appellant wanted to make another *Marsden* motion, and the court held another in camera hearing on his second *Marsden* motion. Appellant again complained his attorney refused to investigate his evidentiary claims, counsel was only focused on "SB 1437," and she failed to consider the expanded eligibility that applied to him under "SB 775."

The court explained to appellant that Senate Bill 775 applied to his case, and the appellate court affirmed the denial of his first petition based on the provisions of the amended statute. Appellant claimed the new law was not applicable when his first petition was considered.

---

[7] If defendant raises a *Marsden* issue on appeal, or an issue related to *Marsden*, the previously sealed transcript of the in camera hearing is subject to disclosure. (See California Rules of Court, rule 8.47; *People v. Knight* (2015) 239 Cal.App.4th 1, 7–8.)

The court denied appellant's second *Marsden* motion. He immediately asked to represent himself. The court relieved appointed counsel and granted his motion to represent himself on his petition for resentencing.

When the proceedings resumed in open court, the court stated appellant was unhappy with the decision to deny his *Marsden* motion and wanted to represent himself. The court further stated appellant was representing himself and asked him if he had anything to add to his pending petition. Appellant replied he needed time to prepare.

The court reconsidered its decision and stated it was going to reappoint the same defense counsel to represent appellant, and it would not allow appellant to represent himself because "[y]ou've had a history of filing this petition since June of 2020." Appellant said the law had changed since his first petition because Senate Bill 775 expanded eligibility for resentencing. The court again stated he was raising the same issues, the appellate court considered the amendments enacted by Senate Bill 775 when it affirmed the denial of his first petition, appellant was "just playing games," and he could either represent himself and proceed with the hearing or accept reappointment of the same counsel.

The court reappointed counsel, and both defense counsel and the prosecutor submitted on the pleadings. The court denied appellant's second petition and extensively read from this court's opinion that affirmed the denial of his first petition. The court explained this court addressed the merits of appellant's first petition based on the expanded eligibility enacted by Senate Bill 775, and found appellant was ineligible for resentencing as a matter of law.

## B.    *Denial of the Marsden Motions*

Appellant's claims that defense counsel was prejudicially ineffective necessarily implicate the complaints he made at the *Marsden* hearings. The law governing a *Marsden* motion "is well settled. 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial

22.

court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' " (*People v. Fierro* (1991) 1 Cal.4th 173, 204; *People v. Memro* (1995) 11 Cal.4th 786, 857.)

While the trial court must afford the defendant the opportunity to express specific reasons why he believes he is not being adequately represented, the court is not required to accept defendant's assertions of inadequate representation and may instead credit counsel's explanation. (*People v. Vera* (2004) 122 Cal.App.4th 970, 978–980; *People v. Webster* (1991) 54 Cal.3d 411, 436.) We review the denial of a *Marsden* motion under an abuse of discretion standard. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)

The court did not abuse its discretion when it denied appellant's *Marsden* motions. His motions were based on either a misunderstanding or misapprehension of the applicable law on petitions for resentencing. Appellant complained his attorney refused to raise evidentiary and factual issues in his petition. Even after the amendments enacted by Senate Bill 775, however, "[t]he mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding.… The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*Farfan, supra,* 71 Cal.App.5th at p. 947.)

Appellant's complaints about his attorney also failed to understand that this court's opinion that affirmed the denial of his first petition had already addressed whether

appellant's first petition stated a prima facie case for resentencing of his murder convictions under the amendments enacted by Senate Bill 775.

The entirety of the record reflects appellant was ineligible for relief under section 1172.6 as a matter of law, and defense counsel was obviously aware that appellant could not raise evidentiary claims of trial error in his section 1176 petition. An attorney is not ineffective for failing to raise meritless objections or motions. (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)

**C.**     ***Appellant's Motion to Represent Himself***

Appellant next argues that just before conducting the hearing on his second petition for resentencing, the trial court improperly rescinded its order that he could represent himself on his second petition for resentencing, in violation of his constitutional rights and *Faretta v. California* (1975) 422 U.S. 806.

"To invoke the constitutional right to self-representation, a criminal defendant must make an *unequivocal* assertion of that right in a timely manner. [Citation.] 'The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Barnett*, *supra*, 17 Cal.4th at p. 1087.)

"Applying these principles, courts have concluded that under some circumstances, remarks facially resembling requests for self-representation were equivocal, insincere, or the transitory product of emotion." (*People v. Tena* (2007) 156 Cal.App.4th 598, 607.) "Equivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-

24.

representation, or where such actions are the product of whim or frustration." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205–1206 [defendant's *Faretta* motion was not unequivocal because he requested to represent himself immediately after the court denied his *Marsden* motion, his statements indicated he made the *Faretta* motion "only because he wanted to rid himself of appointed counsel," and the defendant's "main problem with counsel was a disagreement over trial tactics, which is 'an insufficient reason to grant an untimely *Faretta* request ....' "].)

The court did not violate *Faretta* by reconsidering its decision on whether appellant could represent himself at the hearing. At the *Marsden* hearings, the court carefully explained to appellant that he could not raise evidentiary claims in his petition, this court had reviewed whether his first petition stated a prima facie case for resentencing on his murder convictions based on the amendments enacted by Senate Bill 775, and that counsel was not ineffective. When the court denied his second *Marsden* motion, appellant immediately moved to represent himself, and the court initially granted the request. Within minutes, when the proceedings returned to open court, the court reconsidered its decision and decided appellant was "playing games" by requesting to represent himself in response to the denial of his meritless *Marsden* motions.

The record supports the court's findings that appellant's immediate demand to represent himself, made in reaction to the denial of his second meritless *Marsden* motion, was an attempt to manipulate the proceedings. Appellant was playing "the *Faretta* game," and "[h]is request was at best equivocal and hardly an unqualified waiver since he only wanted to represent himself if the court would not give him another attorney. … [I]t was pretty obvious that this defendant was simply playing games with the court.…" (*People v. Lopez* (1981) 116 Cal.App.3d 882, 889–890; *People v. Williams* (1990) 220 Cal.App.3d 1165, 1170.)

**D.**     *Ineffective Assistance of Trial Counsel*

Appellant argues trial counsel was prejudicially ineffective for failing to raise certain instructional arguments and other matters at his request during the hearing on his second petition for resentencing. Appellant further argues counsel ignored his request to waive his presence at the hearing on the petition, and instead forced him to be transported from state prison to the county jail, that caused him to miss certain educational classes in state prison. Appellant asserts trial counsel allegedly made these decisions out of "spite" and because counsel was "disgruntled" as a result of appellant's multiple *Marsden* motions.[8]

The record refutes appellant's claims of ineffective assistance. There is no evidence counsel acted out of spite in handling his case. As previously explained, an attorney is not ineffective for failing to raise meritless objections or motions. (*People v. Lucero, supra,* 23 Cal.4th at p. 732.) Counsel obviously recognized that appellant's "new" challenges to his first degree murder convictions under Senate Bill 775 had already been addressed by this court, and appellant's evidentiary claims could not be raised in a section 1172.6 petition.

**E.**     *Ineffective Assistance of Appellate Counsel*

Finally, appellant argues his appointed appellate counsel was prejudicially ineffective for filing a *Wende* brief in this appeal from the denial of his second petition, instead of raising certain issues at his request.

An appellate counsel does not commit ineffective assistance by filing a *Wende* brief since "the appellate court … review[s] the entire record to determine whether there is any arguable issue." (*People v. Kelly* (2006) 40 Cal.4th 106, 119.)

---

[8] Appellant's insistence that he wanted to waive his presence at the hearing on his second petition for resentencing is inconsistent with his appellate claim that he wanted to represent himself at that same hearing.

As previously explained, the California Supreme Court held in *Delgadillo* that "[w]hen appointed counsel finds no arguable issues to be pursued on appeal: (1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter." (*Delgadillo*, *supra*, 14 Cal.5th at pp. 231–232.) "If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues. [Citations.] … While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal." (*Delgadillo*, at p. 232.)

In this appeal, appellant responded to this court's *Delgadillo* order and filed a supplemental brief. We have addressed the issues raised in appellant's supplemental brief and, in an abundance of caution, exercised our discretion to conduct our own independent review of the record. There are no arguable issues, and appellant was ineligible for resentencing as a matter of law as to his murder and attempted murder convictions.

## DISPOSITION

The trial court's order of October 4, 2022, denying appellant's second petition for resentencing is affirmed.